UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                      Chapter 11, Subchapter V

GNSP CORP d/b/a RX OASIS,                   Case No. 8:24-bk-300-CPM

    Debtor.
_____/

## PLAN FOR SMALL BUSINESS UNDER CHAPTER 11

**Background for Cases Filed Under Subchapter V**

    A. **Description and History of the Debtor's Business Prior to the Petition Date**

The Debtor is a Florida corporation formed in September of 2011. The Debtor operates an independent pharmacy doing business as RX Oasis and located at 9304 Balm Riverview Road in Riverview, Florida. The Debtor provides prescription medications, pet medications, vitamins and supplements, immunizations, medical equipment/durable medical equipment products, medication consultation, and wellness services to retail customers, group homes, and assisted living facilities in the Tampa Bay area.

The Debtor filed this case to restructure its balance sheet, including approximately $2 million owed to the U.S. Small Business Administration (the "**SBA**") for an Economic Injury Disaster Loan as well as obligations to its other creditors.

    B. **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such creditors and equity interest holders would receive in a chapter 7 liquidation. Attached hereto as **Exhibit A** and incorporated herein by reference is a liquidation analysis which shows that creditors will receive at least as much under the Plan as they would receive in a chapter 7 liquidation. Because the Debtor is liquidating its assets, the Debtor submits that the treatment proposed under the Plan satisfies Section 1129(a)(7) of the Bankruptcy Code.

    C. **Ability to Make Future Plan Payments**

The Debtor must also show that it will have sufficient funds to make the payments required under the Plan. The Plan provides for the sale of substantially all of the assets of the Debtor to one or more purchasers, with the Debtor's cash on hand and net sale proceeds to be distributed to

the Debtor's creditors as provided in the Plan. See Article 7.01. Accordingly, the Plan is *de facto* feasible and satisfies Section 1129(6) of the Bankruptcy Code.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

### Article 1:   Summary

This Plan under Chapter 11 of the Title 11 of the United States Code (the "**Bankruptcy Code**") proposes to pay creditors of the Debtor as set forth in Section C above.

The Plan provides for:    1 class of priority claims;
2 classes of secured claims;
1 class of non-priority unsecured claims; and
1 class of equity security holders.

All creditors and equity security holders should refer to Articles 3 through 6 of the Plan for information regarding the precise treatment of their claims and equity interests.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one. (If you do not have an attorney, you may wish to consult one.)**

### Article 2:   Classification of Claims and Interests

2.01 **Class 1 ....................** All allowed claims entitled to priority under § 507(a) of the Bankruptcy Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)). The Florida Department of Revenue filed Claim No. 4 in the total amount of $1,019.88, designating the amount of $719.88 as a priority claim and $300.00 as a general unsecured claim.

2.02 **Class 2…………….** The secured claim of Bank of America which is secured by a lien on the Debtor's 2019 Honda FIT. Bank of America filed Claim No. 1 as a secured claim in the amount of $5,687.98.

2.03 **Class 3…………….** The secured claim of the SBA, which is secured by a lien on some but not all of the Debtor's assets. The SBA filed Claim No. 3 in the total amount of $2,048,600.80, designating the amount of $557,117.40 as a secured claim and $1,491,482.68 as an unsecured claim.

2.04 **Class 4 ....................** All non-priority unsecured claims allowed under § 502 of the Bankruptcy Code. The liquidated, scheduled and filed Class 4 unsecured claims of creditors other than the SBA total $317,848.61. As stated above, Claim No. 3 filed by the SBA includes an unsecured claim in the amount of $1,491,482.68.

2.05   **Class 5** ....................   All equity security interests in the Debtor.

**Article 3:   Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees**

3.01   **Unclassified Claims**   Under § 1123(a)(1) of the Bankruptcy Code, administrative expense claims and priority tax claims are not in classes.

3.02   **Administrative Expense Claims**   Each holder of an administrative expense claim allowed under § 503 of the Bankruptcy Code will be paid in full on the Effective Date (as defined below) of the Plan, in cash, or on such other terms as may be agreed on by the holder of the claim and the Debtor. The administrative claims are comprised of fees for professionals employed by the Debtor, the fees of the Subchapter V Trustee, and postpetition purchases of goods and services, including from McKesson Corporation for pharmacy inventory.  The administrative expense claims will fluctuate prior to confirmation but are estimated at $130,000 to $210,000.

3.03   **Priority Tax Claims**   Each holder of a priority tax claim will be paid a total value as of the Effective Date of the Plan of the allowed amount of such claim.

3.04   **Statutory Fees**   All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date of the Plan have been paid or will be paid timely as they come due.  Because this is a case under Subchapter V of the Bankruptcy Code, no such fees are owed or expected to be owed.

**Article 4: Treatment of Claims and Interests Under the Plan**

4.01   **Claims and interests shall be treated as follows under the Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1** - Priority Claims Excluding Article 3 Claims | ☐ Impaired<br>☒ Unimpaired | The Class 1 Claims are unimpaired by the Plan.<br><br>Each holder of a Class 1 Priority Claim will be paid in full, in cash, on the later of the Effective Date of the Plan and the date on which such claim is allowed by a final non-appealable order, or on such other terms as may be agreed on by the holder of the claim and the Debtor.  There are no scheduled or filed priority claims. |

| | | |
|---|---|---|
| **Class 2** – Secured Claim of Bank of America | ☐ Impaired<br>☒ Unimpaired | Class 2 is unimpaired by the Plan.<br><br>The Debtor will either: (1) surrender the 2019 Honda FIT to Bank of America; (2) sell the 2019 Honda FIT and remit the proceeds of the sale to Bank of America; or (3) continue to make the contractual payments until Claim No. 1 is paid in full.  Bank of America shall retain its lien on the 2019 Honda FIT until Claim No. 1 has been paid in full. |
| **Class 3** – Secured Claim of the SBA | ☐ Impaired<br>☒ Unimpaired | Class 3 is unimpaired by the Plan.<br><br>The SBA's allowed secured claim will be paid in full, on the Effective Date of the Plan, from the proceeds of its collateral after payment of allowed Administrative Expense Claims, allowed Priority Tax, and Priority Claims. |
| **Class 4** – All Non-Priority Unsecured Claims | ☒ Impaired<br>☐ Unimpaired | Class 4 is impaired by the Plan.<br><br>Each holder of an allowed Class 4 claim will receive, on the Effective Date of the Plan, a *pro-rata* share of unencumbered proceeds after the payment of allowed Administrative Expense Claims, allowed Priority Tax Claims, allowed Priority Claims, and allowed secured claims. |
| **Class 5** – All Equity Interests | ☐ Impaired<br>☒ Unimpaired | Class 5 is unimpaired by the Plan.<br><br>Class 5 is comprised of all equity interests in the Debtor, which are owned by Todd Tortoretti and Richard Fagan.  Mr. Tortoretti and Mr. Fagan will retain their equity interests in the Debtor.  No distributions will be made to Mr. Tortoretti or Mr. Fagan until the distributions to Class 1-4 have been made. |

### Article 5:   Allowance and Disallowance of Claims

| | | |
|---|---|---|
| 5.01 | **Disputed Claims** | A disputed claim is a claim that has not been allowed or disallowed by a non-appealable final order, and as to which either:<br>(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or |

| | | |
|---|---|---|
| | | unliquidated, or the Debtor has filed an objection to such claim. |
| 5.02 | **Distribution on a Disputed Claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a non-appealable final order. |
| 5.03 | **Settlement of Disputed Claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with the Court's approval and in compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

**Article 6: Provisions for Executory Contracts and Unexpired Leases**

| | | |
|---|---|---|
| 6.01 | **Assumed Contracts and Leases** | The Debtor may assume and assign to a purchaser of its assets one or more of its executory contracts and unexpired leases if requested by such purchaser, effective as of the Effective Date. If a purchaser requests the assumption and assignment of any such executory contracts or unexpired leases, the Debtor will file a modification to the Plan or a motion with the Court seeking the approval of such assumption and assignment. Except for executory contracts and unexpired leases that have been assumed and assigned to a purchaser of its assets or assumed before the Effective Date, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date. |
| 6.02 | **Cure Claims and Rejection Damage Claims** | Any lessor, lessee, or other party to an assumed contract asserting a cure claim in connection with the assumption of any unexpired lease or executory contract, as contemplated by Section 365(b) of the Bankruptcy Code, must file such cure claim with the Bankruptcy Court on or before the deadline to vote to accept or reject the Plan or such other deadline that is ordered by the Bankruptcy Court, asserting all alleged amounts accrued or alleged defaults through the Effective Date. Any lessor or other party to an executory contract or unexpired lease assumed by the Debtor failing to file a cure claim by such deadline shall be forever barred from asserting, collecting, or seeking to assert or collect any amounts or defaults relating thereto against the Debtor. The Debtor shall have sixty (60) days from the Effective Date to file an objection to any cure claim. Any disputed cure claims shall be resolved either consensually or by the Bankruptcy Court. Except as may otherwise be agreed to by the parties, the purchaser of the Debtor's assets shall cure any and all undisputed cure claims within 180 days after the Effective Date. Except as may otherwise be agreed to by the parties, the purchaser of the Debtor's assets shall cure all disputed cure claims within 120 days after the entry of a final order determining the amount, if any, of the Debtor's liabilities with respect thereto. A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming the Plan (the "**Confirmation Order**"), unless otherwise ordered by the Bankruptcy Court. |



**Article 7: Means for Implementation of the Plan**

| | | |
|---|---|---|
| 7.01 | **Funding Source for Plan Payments** | Payments required under the Plan will be funded from the cash on hand of the Debtor and the net proceeds from the sale of the Debtor's assets. The Debtor has entered into a term sheet with Walgreens to purchase the following assets of the Debtor free and clear of all liens: patient prescription files and records, prescription drug inventory, and trademarks and trade names used by the Debtor. The purchase price for the patient prescription files and records will be an amount equal to $300,000 in cash paid on the closing date and up to $150,000 in cash to be paid approximately 12 months after the closing date based on the daily average number of prescriptions sold to Walgreens maintaining certain benchmark daily amounts calculated on a 7-day calendar week. The purchase price for the inventory shall be the average wholesale price of the inventory less certain discounts based on the type of inventory. A third party engaged by Walgreens is currently conducting due diligence and, following such due diligence, the Debtor anticipates entering into a definitive purchase and sale agreement with Walgreens. The Walgreens term sheet does not provide for the purchase of the Debtor's pharmacy license, and the Debtor is exploring alternatives for the sale of its pharmacy license as permitted by the restrictive covenants in the Walgreens term sheet. In the event of a sale to Walgreens as described above and taking into account the cash on hand of the Debtor, the Debtor believes it will be able to (i) pay in full all allowed Administrative Expense Claims, allowed Priority Tax Claims, allowed Priority Claims, and secured claims, and (ii) make a distribution to unsecured creditors. |
| 7.02 | **Distributions by Debtor** | All distributions under the Plan shall be made by the Debtor, whether the Plan is confirmed pursuant to Section 1191(a) or (b) of the Bankruptcy Code. |
| 7.03 | **Unclaimed or De Minimis Distributions** | Unclaimed distributions shall be administered pursuant to section 347 of the Bankruptcy Code. Should the Holder of an Allowed Claim fail to negotiate a payment from the Debtor within 90 days of the date the check was issued, the Debtor shall provide the Holder with written notice of the requirement that the Holder of an Allowed Claim negotiate the payment within 180 days of the date the check was issued. Should the Holder thereafter fail to negotiate the payment within 180 days, then upon the expiration of the deadline set forth in section 1143, the Debtor may exercise its remedies under section 347(b) of the Bankruptcy Code. De minimis Distributions less than five dollars ($5.00) shall not be made, and shall become unclaimed funds, which shall vest in the Debtor. |

| | | |
|---|---|---|
| 7.04 | **Vesting of Assets** | On the Effective Date, except as otherwise expressly provided in the Plan or in the Bankruptcy Code, all assets of the Debtor's estate shall vest in the Debtor, free and clear of any and all liens, debts, obligations, claims, cure claims, liabilities, encumbrances, and all other interests of every kind and nature, and the Confirmation Order shall so provide.<br><br>Any and all interests, liens, debts, obligations, claims, cure claims, liabilities, encumbrances, and all other interests of every kind and nature in favor of the SBA with respect to the assets of the Debtor's estate shall be retained until such time as the Debtor timely closes on the sale of its assets. |
| 7.05 | **Pursuit of Causes of Action** | On the Effective Date, the Causes of Action shall be vested in the Debtor, except to the extent a Creditor or other third party has been specifically released from any Cause of Action by the terms of the Plan or by a Final Order of the Bankruptcy Court, provided, however, the right to pursue Causes of Action shall vest in the Debtor. The Debtor will have the rights, powers and privileges, in its absolute discretion, to pursue, not pursue, settle, release or enforce any Causes of Action without seeking any approval from the Bankruptcy Court. The Debtor is not currently in a position to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action. Any party in interest that engaged in business or other transactions with the Debtor Prepetition or that received payments from the Debtor Prepetition may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation.<br><br>No Creditor or other party should vote for the Plan or otherwise rely on the Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Cause of Action. No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action. ADDITIONALLY, UNLESS OTHERWISE STATED IN THIS PLAN, THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE DEBTOR. Creditors are advised that legal rights, claims and rights of action the Debtor may have against them, if they exist, are retained under the Plan for prosecution by the Debtor unless a specific order of the Bankruptcy Court authorizes the Debtor to release such claims. As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Plan, or the Schedules, or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtor does not possess or does not intend to prosecute a particular claim or Cause of Action if a particular Creditor votes to accept the Plan.   It is the expressed intention of the Plan to preserve rights, objections to Claims, and rights of action of the Debtor, whether now known or unknown, for the |

benefit of the Debtor's estate. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan; nor shall the Debtor, as a result of such failure, be estopped or precluded under any theory from pursuing such Cause of Action. Nothing in the Plan operates as a release of any of the Causes of Action, except as expressly provided otherwise.

The Debtor does not presently know the full extent of the Causes of Action, and for purposes of voting on the Plan, all Creditors are advised that the Debtor will have substantially the same rights that a Chapter 7 trustee would have with respect to the Causes of Action. Accordingly, neither a vote to accept the Plan by any Creditor nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor or any other Person or Entity, unless such Creditor, Person or Entity is specifically identified by name as a released party in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court. Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any res judicata or collateral estoppel or other preclusive effect that would precede, preclude, or inhibit prosecution of such Causes of Action following Confirmation of the Plan.

The Debtor reserves the right to pursue any or none of the Causes of Action in its sole discretion.

| 7.06 | **Default** | The failure to make any payment required by the Plan shall constitute an event of default. The failure by the Debtor to cure such monetary default within fifteen (15) days following receipt by the Debtor of a written notice of default from any affected holder of an allowed claim shall constitute an uncured default. |
| --- | --- | --- |
| | | In the event of an uncured default: (i) secured creditors may seek relief from stay in the Bankruptcy Court to pursue their collateral and any other applicable remedies including, without limitation, conversion or dismissal of the case; and (ii) unsecured creditors may pursue any applicable remedies in any court of competent jurisdiction, including, without limitation, conversion or dismissal of the case. |

### Article 8: General Provisions

| 8.01 | **Definitions and Rules of Construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan. |
| --- | --- | --- |

4874-5824-3256, v. 2

| | | |
|---|---|---|
| 8.02 | **Effective Date** | The Effective Date of this Plan (the "**Effective Date**") is the first business day following the date that is 14 days after the entry of the Confirmation Order; provided, however, that if a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding Effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan or such other agreement, document, or instrument. |
| 8.07 | **Corporate Governance** | To the extent prohibited by § 1123(a)(6) of the Bankruptcy Code, the Debtor will not issue non-voting equity interests, and its applicable governing documents will be deemed to have been amended as of the Effective Date of the Plan to prohibit such issuance**.** |
| 8.08 | **Retention of Jurisdiction** | Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, until this case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction of this case that is permitted by applicable law, including any jurisdiction that is necessary or appropriate to ensure that the purposes and intent of the Plan are carried out. |

**Article 9: Discharge, Injunction**

| | | |
|---|---|---|
| 9.01 | **Discharge** | In accordance with § 1141(d)(3) of the Bankruptcy Code, since the Plan provides for the liquidation of substantially all of the property of the estate and the Debtor will not engage in business after consummation of the Plan, the Debtor shall not be entitled to a discharge. |
| 9.02 | **General Injunction** | **Pursuant to §§ 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various** |

4874-5824-3256, v. 2

<u>transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all persons that have held, currently hold or may hold a claim, debt, or liability that is discharged or terminated pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged or terminated claims, debts, or liabilities, other than actions brought to enforce any rights or obligations under the Plan: (a) commencing or continuing in any manner any action or other proceeding against the Debtor or its assets or its estate; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor or its assets or its estate; (c) creating, perfecting or enforcing any lien or encumbrance against the Debtor or its assets or its estate; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or its assets or its estate; (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Debtor or its estate under the Plan and the documents executed in connection therewith. The Debtor shall have the right to independently seek enforcement of this general injunction provision. This general injunction provision is an integral part of the Plan and is essential to its implementation.</u>

GNSP CORP

By: _____
Todd Tortoretti
Its: President

/s/ Amy Denton Mayer
Amy Denton Mayer
Florida Bar No. 634506
STICHTER, RIEDEL, BLAIN & POSTLER, P.A.
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone: (813) 229-0144
Email: amayer@srbp.com
Attorneys for Debtor

Page 10

## **EXHIBIT A**

## **LIQUIDATION ANALYSIS**

## LIQUIDATION ANALYSIS IN CONNECTION WITH PLAN FOR GNSP CORP

### Statement of Assets

|  | Chapter 11 Plan Value | Liquidation Value | Notes |
|---|---|---|---|
| Cash in Bank Accounts | $486,328.40 | $486,328.40 | 1 |
| Security Deposit | $1,900.00 | $0.00 | 2 |
| Accounts Receivable | $120,597.00 | $48,238.80 | 3 |
| Office Equipment | $1,000.00 | $0.00 | 4 |
| Vehicle | $6,323.00 | $635.02 | 5 |
| Pharmaceutical Inventory | $44,320.00 | $4,432.00 | 6 |
| Website, Pharmacy License, DEA License | Unknown | Unknown | 7 |
| **Total Assets** | **$660,468.40** | **$539,634.22** | |

### Statement of Liabilities

|  | Amount | |
|---|---|---|
| **Administrative Expense Claims** | $150,000.00 | 8 |
| **Priority Tax Claims (DOR)** | $719.88 | 9 |
| **Priority Claims** | $0 | |
| **Secured Claims** | $562,805.38 | 10 |
| **General Unsecured Claims** | $1,809,331.29 | 11 |
| **Total Claims** | **$2,522,856.55** | |

**AMOUNT PAYABLE TO UNSECURED CREDITORS IN CHAPTER 11:**

*Pro-rata* share of unencumbered proceeds after payment of allowed Administrative Expense Claims, allowed Priority Tax Claims, allowed Priority Claims, and allowed secured claims.

**AMOUNT PAYABLE TO UNSECURED CREDITORS IN CHAPTER 7:    $0**

## ASSUMPTIONS IN THE PREPARATION OF THE LIQUIDATION ANALYSIS IN CONNECTION WITH DEBTOR'S PLAN

1.  This Liquidation Analysis was prepared in accordance with the requirements of §1129 of the Bankruptcy Code to establish that the Plan is in the best interest of each holder of a claim or interest.

2.  The Liquidation Analysis is based upon certain estimates and assumptions that, although developed and considered reasonable by the Debtor, are inherently subject to significant economic factors, market conditions, uncertainties, and contingencies beyond the control of the Debtor. The Liquidation Analysis is also based on assumptions with regard to liquidation decisions that are subject to change. Accordingly, there can be no assurance that the values reflected in this Liquidation Analysis would be realized if the Debtor were in fact to undergo such liquidation and actual results could vary materially and adversely from those contained herein. The liquidation and reorganization values represent the Debtor's best estimate of those values based on available information.

3.  This analysis assumes the conversion of the current Chapter 11 case to a Chapter 7 case with the liquidation of the Debtor's assets by a Chapter 7 Trustee within a significantly abbreviated timeframe. A Chapter 7 Trustee would be appointed by the Bankruptcy Court to administer the estate. The Chapter 7 Trustee is independent and would be entitled to make all of his or her own decisions regarding the liquidation of the estate's assets, the hiring of professionals, the pursuit of claims or litigation and the payment of or objection to claims. The distribution of any ultimate dividend would be made in accordance with the priorities established by the Bankruptcy Code. The Chapter 7 Trustee would be compensated in accordance with the Bankruptcy Code.

4.  The Liquidation Analysis uses the Debtor's unaudited financial information, and other figures estimated by the Debtor's management and professionals.

5.  There can be no assurances made that all of the Debtor's assets will be completely liquidated during the shortened liquidation period in a Chapter 7.

6.  This Liquidation Analysis is the Debtor's best estimate of the net value of assets available to distribution to its creditors after deducting the value of secured and administrative claims. To the extent the Debtor's estate is comprised of assets that had no value or nominal value as set forth in the Debtor's bankruptcy schedules, those assets were excluded from this analysis.

7.  This Liquidation Analysis is without prejudice to the Debtor's ability to object to the characterization, amount, secured status or classification of any claim or asset. The Debtor reserves all rights and objections to any filed or scheduled claim, and any application or motion seeking an administrative expense claim. Reference to any filed or scheduled claim or any pleading seeking a claim shall not constitute a waiver of any kind.

2

## NOTES TO LIQUIDATION ANALYSIS

1. Cash in Debtor's bank accounts as of March 31, 2024. The Debtor's Cash balance will change prior to the Confirmation Hearing. The source of the Debtor's cash is from business operations.

2. The amount of the Debtor's security deposit with the landlord as of the Petition Date. In the event of a conversion of the case to Chapter 7, the landlord would likely set off the deposit against the balance then due.

3. The face amount of the Debtor's accounts receivable as of March 31, 2024. The Debtor estimates that the forced liquidation of these assets would result in a Chapter 7 trustee receiving 40% of the scheduled value.

4. The value of the office equipment as of the Petition Date. The Debtor estimates that the forced liquidation of these assets would not result in any recovery in a Chapter 7 case.

5. The value of a 2019 Honda FIT as of the Petition Date. The vehicle is subject to a lien in favor of Bank of America in the amount of $5,687.98.

6. The value of the pharmaceutical inventory as of the Petition Date. The Debtor estimates that the forced liquidation of these assets would result in a Chapter 7 trustee receiving 10% of the scheduled value.

7. The value of the Debtor's website, pharmacy license, and DEA license is unknown at this time and will be dependent on whether the assets are sold together or separately.

8. Administrative claims include estimated Chapter 11 fees and costs of the Debtor's counsel (Stichter, Riedel, Blain & Postler, P.A.) and the Subchapter V Trustee, net of any unused retainer(s) and postpetition purchases of goods and services, including from McKesson Corporation for pharmacy inventory. The administrative expense claims will fluctuate prior to confirmation but are estimated at $130,000 to $210,000. Subject to change prior to the Confirmation Hearing. In addition, in the event of a conversion of the case to Chapter 7, the Chapter 7 Trustee would be entitled to compensation pursuant to 11 U.S.C. §326 computed as follows:

        25% of first $5,000 ($1,250 Maximum)
    +    10% of Next $45,000 ($4,500 Maximum)
    +    5% of Next $950,000 ($47,500 Maximum)
    +    3% of Balance

The Debtor does not believe that there would be assets available for administration in a Chapter 7. To the extent that funds are available, any disbursements would be based on the calculations above.

9. Based upon the priority tax claim filed by the Florida Department of Revenue. Subject to Assumption No. 7 above.

10. Based upon the secured claims of the SBA and Bank of America.  Subject to Assumption No. 7 above.

11. Based upon scheduled and filed claims. Subject to Assumption No. 7 above.

4

4885-2212-3704, v. 4